Nathan K. Low (SBN 299587)
E-Mail: nlow@fisherphillips.com
Elizabeth T. Ferguson (SBN 318934)
E-Mail: etferguson@fisherphillips.com
Jonathan G. Chang (SBN 347678)
E-Mail: jchang@fisherphillips.com
FISHER & PHILLIPS LLP
1 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendant
WAYFAIR LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES WHITE, individually, and on behalf of other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>WAYFAIR LLC; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.:<br><br>(Removed from Alameda County Superior Court, Case No. 25CV155144)<br><br>**DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)**<br><br>Complaint Filed: November 17, 2025<br>Removal:  January 12, 2026<br>Trial Date:  Not Set |

## **TABLE OF CONTENTS**

I.    PROCEDURAL HISTORY.............................................................................................. 1

II.   TIMELINESS OF REMOVAL ...................................................................................... 2

III.  NOTICE PROVIDED TO STATE COURT AND PLAINTIFF................................... 2

IV.   REMOVAL IS BASED ON CAFA JURISDICTION.................................................... 2

    A.    Size of the Class............................................................................................. 3

    B.    Minimal Diversity.......................................................................................... 3

    C.    Amount in Controversy................................................................................. 4

    D.    Baseline Facts ................................................................................................ 5

    E.    Minimum Wage Claims................................................................................. 5

    F.    Reporting Time Pay Claims .......................................................................... 6

    G.    Overtime Claims ........................................................................................... 7

    H.    Meal Period Claims....................................................................................... 8

    I.    Rest Period Claims........................................................................................ 9

    J.    Untimely Wage Payments............................................................................. 10

    K.    Wage Statement Penalties............................................................................. 11

    L.    Waiting Time Penalties ................................................................................. 12

    M.    Attorney's Fees ............................................................................................. 12

    N.    Conclusion on Amount in Controversy ........................................................ 13

V.    VENUE.......................................................................................................................... 13

VI.   SERVICE OF NOTICE OF REMOVAL ON STATE COURT ................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*Alfaro v. Banter by Piercing Pagoda*,
No. SACV 22-00266-CJC(ADSx), 2022 WL 1284823 (C.D. Cal. Apr. 29, 2022)................................ 9

*Beltran v. PeopleReady, Inc.*,
No. 3:23-CV-00179-WHO, 2023 WL 3092973 (N.D. Cal. Apr. 25, 2023) ............................................ 7

*Bryant v. NCR Corp.*,
284 F.Sup.3d 1147, 1151 (S.D. Cal. 2018)................................................................................................... 9

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413, 414-15 (9th Cir. 2018) ...................................................................................................... 12

*Cohn v. Petsmart, Inc.*,
281 F.3d 837, 839-840 (9th Cir. 2002) ...................................................................................................... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81, 89 (2014)................................................................................................................................ 4

*Evers v. La-Z-Boy Inc.*,
No. 21CV2100-LL-BLM, 2022 WL 2966301 (S.D. Cal. Jul. 27, 2022)................................................ 6

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150, 1155-56 (9th Cir. 1998) ................................................................................................. 12

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d 1193, 1197 (9th Cir. 2015) ....................................................................................................... 4

*Kanter v. Warnter-Lambert Co.*,
265 F.3d 853, 857 (9th Cir. 2001) ............................................................................................................ 3

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088, 1090 (9th Cir. 1983) ......................................................................................................... 3

*Lewis v. Moss*,
797 F.2d 747, 751 (9th Cir. 1986) ............................................................................................................ 3

*Lucas v. Michael Kors (USA), Inc.*,
No. CV181608MWFMRWX, 2018 WL 2146403 (C.D. Cal. May 9, 2018) ...................................... 12

*Mamika v. Barca*,
68 Cal.App.4th 487 (1998) ....................................................................................................................... 12

*Marroquin v. Wells Fargo, LLC*,
No. 11CV163-L BLM, 2011 WL 476540 (S.D. Cal. Feb. 3, 2011) ........................................................ 3

*Mintzis v. Scott*,
No. 2:14-CV-01799-CAS, 2014 WL 3818104 (C.D. Cal. Jul. 30, 2014)................................................ 3

*Mitchell v. United States*,
88 U.S. 350, 353 (1874)............................................................................................................................. 3

FP 61019727.4

*Mondragon v. Capital One Auto Fin.*,
    736 F.3d 880, 886 (9th Cir. 2013) ........................................................................................... 3

*Olson v. Becton, Dickinson & Co.*,
    No. 19-cv-00865-MMA-BGS, 2019 WL 4673329 (S.D. Cal. Sept. 25, 2019) ...................... 9

*Perea v. Fedex Ground Package Sys., Inc.*,
    No. 20-CV-00610-DMS-AHG, 2020 WL 3989686 (S.D. Cal. July 15, 2020) ....................... 7

*Sanchez v. Abbot Lab'ys,*
    No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057 (E.D. Cal. June 30, 2021) ....................... 9

*Serrieh v. Jill Acquisition LLC*,
    707 F.Supp.3d 968, 977-75 (E.D. Cal. 2023) ......................................................................... 9

*Stafford v. Dollar Tree Stores, Inc.*,
    No. 2:13-CV-01187-KJM, 2014 WL 1330675 (E.D. Cal. Mar. 28, 2014)......................... 4, 13

*Stevenson v. Dollar Tree Stores, Inc.*,
    No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011)............................................ 13

*Tajonar v. Echosphere, L.L.C.*,
    No. 14CV2732-LAB RBB, 2015 WL 4064642 (S.D. Cal. Jul. 2, 2015)............................. 8, 10

**Statutes**

28 U.S.C. § 84(c) ............................................................................................................................ 13

28 U.S.C. § 1332............................................................................................................... 1, 2, 4, 13

28 U.S.C. § 1441(a) ........................................................................................................................ 13

28 U.S.C. § 1446(a) ........................................................................................................................ 13

28 U.S.C. § 1446(b) .......................................................................................................................... 2

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)

FP 61019727.4

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant WAYFAIR LLC ("Defendant" or "Wayfair") hereby files this Notice of Removal pursuant to 28 U.S.C. § 1332 based on the Class Action Fairness Act of 2005 ("CAFA"). Defendant states that removal is proper for the following reasons:

## I.    PROCEDURAL HISTORY

1.    On November 17, 2025, Plaintiff Charles White ("Plaintiff" or "White"), on behalf of himself and on behalf of other similarly situated employees, filed a class action complaint (the "Complaint") in the California Superior Court for the County of Alameda entitled *CHARLES WHITE, individually, and on behalf of other similarly situated employees v. WAYFAIR LLC; and DOES 1 through 25, inclusive,*, Case No. 25CV155144 ("State Court Action"). The Complaint purports to state causes of action on behalf of Plaintiff and the putative class members for: (1) Violation of Cal. Labor Code §§ 1194, 1197, and 1197.1 (Minimum Wages); (2) Violation of Cal. Labor Code § 1198 and Cal. Code of Regs Title 8, §§ 11010-11170 (Reporting Time Pay Violations); (3) Violation of Cal. Labor Code §§ 510 and 1198 (Unpaid Overtime); (4) Violation of Cal. Labor Code §§ 226.7 and 512(a) (Meal Break Violations); (5) Violation of Cal. Labor Code § 226.7 (Rest Break Violations); (6) Violation of Cal. Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (7) Violation of Cal. Labor Code § 226(a) (Wage Statement Violations); (8) Violation of Cal. Labor Code §§ 201, 202, and 203 (Untimely Final Wages); (9) Violation of Cal. Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (10) Violation of Cal. Business & Professions Code §§ 17200, *et seq.*

2.    On December 11, 2025, Plaintiff initiated service of the Summons and Complaint and notices and forms on Defendant. A true and correct copy of these documents is attached as **Exhibit A** to the Appendix, filed concurrently herewith. *See* Declaration of Nathan K. Low in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332 (D)(2) and (5) ("Low Decl."), ¶¶ 3-4.

3.    On January 12, 2026, Defendant filed and served its Answer to the Complaint. A true and correct copy of this document is included in **Exhibit A** to the Appendix. Low Decl., ¶ 4.

4.    The documents attached as **Exhibit A** to the Appendix constitute all pleadings, process,

1

and orders served on and by Defendant in the State Court Action.

## II.    TIMELINESS OF REMOVAL

5.    The 30-day removal period runs when the party seeking to remove receives a "paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3). Plaintiff served the Summons and Complaint on Defendant on December 11, 2025. Low Decl. at ¶ 3. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendant was effectively served with the Summons and Complaint and within one year after commencement of this action.

## III.    NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

6.    Written notice of this Notice of Removal to the United States District Court for the Northern District of California will be served on Plaintiff's counsel of record at Blackstone Law, APC. A true and correct copy of Defendant's Notice to Adverse Party of Removal of Civil Action to Federal District Court is attached as **Exhibit B** to the Appendix (without exhibits because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 6.

7.    In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Alameda. A true and correct copy of Defendant's Notice to the Superior Court of Removal of Civil Action to Federal District Court is attached as **Exhibit C** to the Appendix (without exhibits because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 7.

8.    Proofs of Service of Defendant's Notice of Removal to Federal District Court to Adverse Parties and Notice of Removal to the Superior Court of the State of California, County of Alameda will be filed with this Court immediately. *See* Low Decl., ¶ 8.

## IV.    REMOVAL IS BASED ON CAFA JURISDICTION

9.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (5). CAFA provides that a district court shall have original jurisdiction over a class action if (1) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action involves one hundred (100) or more putative class members; and (3) any member of the putative class is a citizen of a state different from any defendant

(minimal diversity).

## A.    Size of the Class

10.    Wayfair has employed approximately 6,042 putative class members during the class period as measured from Wayfair data for the purposes of this submission to the Court during the four-year period of November 17, 2021 to December 16, 2025 ("Class Period") claimed to be at issue in the Complaint. Complaint, ¶ 1; Declaration of Valerie Bonilla in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332 (D)(2) and (5) ("Bonilla Decl."), ¶ 7.    This satisfies the numerosity requirement under CAFA as it exceeds the minimum of 100 class members.

## B.    Minimal Diversity

11.    Minimal diversity of citizenship is also established under CAFA.  To establish citizenship for diversity purposes, a natural person must be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Kanter v. Warnter-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A natural person's residence is prima facie evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011).  In fact, it is presumed that a natural person's residence is their domicile, and the party resisting this presumption bears the burden of producing contrary evidence. *Lewis v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).  Moreover, an existing domicile is presumed to continue. *Mitchell v. United States*, 88 U.S. 350, 353 (1874) ["[D]omicile, once acquired, is presumed to continue until it is shown to have been changed."]; *Mintzis v. Scott*, No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. Jul. 30, 2014).

12.    Here, the putative class of approximately 6,042 putative class members contains citizens of various states including, Arizona, Nevada, and Texas whereas Wayfair is a limited liability company organized in the State of Delaware with its principal place of business in Boston, Massachusetts.  Bonilla Decl., ¶¶ 5, 7.

13.    At all times alleged in the Complaint, at the time of the filing of this action, and at the time this Notice of Removal was filed, the sole member of Wayfair is SK Retail, Inc. ("SK Retail"). Bonilla Decl., ¶ 4.  SK Retail is now, and ever since this action commenced has been, incorporated under the laws

3

of the State of Massachusetts. *Id.* Moreover, Boston, Massachusetts is the site of SK Retail's corporate headquarters and executive offices, where its high-level officers direct, control, and coordinate its activities. *Id.* SK Retail's executive and administrative functions, including corporate financing and accounting, are directed from Boston, Massachusetts. *Id.* SK Retail's corporate decisions, including operational, executive, administrative and policymaking, are made from its Boston, Massachusetts headquarters, including human resources, finance and accounting, treasury, legal, payroll, and safety. *Id.*

14.    Accordingly, Wayfair is a citizen of the state of Massachusetts and not California.

15.    Under Section 1332(d)(2) of the CAFA, only one member of the putative class must be a citizen of a state different from any defendant. Because Wayfair is a citizen of Massachusetts and numerous members of the putative class are citizens of different states, the minimal diversity requirement of the CAFA is met.

## C.    Amount in Controversy

16.    Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement, which under the CAFA is $5,000,000 in the aggregate. See, e.g., *Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-CV-01187-KJM, 2014 WL 1330675, at \*2 (E.D. Cal. Mar. 28, 2014); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-840 (9th Cir. 2002).

17.    The U.S. Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) held that a defendant's notice of removal under the CAFA need include only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Should the plaintiff challenge defendant's assertion of the amount in controversy, at that stage as part of a remand challenge, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million, where, as here, the damages are unstated in the Complaint. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

18.    Although Wayfair reserves all rights and defenses and denies that this action is suitable for class action treatment, the amount in controversy requirement is derived from the Complaint as pled, which in this class action, in the aggregate, places in controversy an amount well in excess of $5,000,000.

19.    The amount of controversy in this matter is, based on a conservative estimate as set forth in greater detail below:

4

**D.    Baseline Facts**

20.    During the Class Period (i.e., November 17, 2021 to December 16, 2025), Wayfair has employed approximately 6,042 class members ("Putative Class") based on the class defined in the Complaint. Bonilla Decl., ¶ 7; Complaint, ¶ 1.

21.    During the Class Period, the Putative Class typically worked an estimated 109,414 workweeks and that most of these employees regularly worked at least 4 workdays per workweek for at least 8 hours per workday. Bonilla Decl., ¶ 8.

22.    For purposes of this removal, Wayfair has applied California's minimum wage for 2025 of $16.50 to calculate the theoretical damages at issue.

23.    The putative Class has a relatively high turnover figure due to the nature of the work and entry level of most of the employees, with approximately 5,957 members of the Putative Class leaving their employment with Wayfair during the Class Period, approximately 4,132 of which left their employment with Wayfair from November 17, 2022 to December 16, 2025. Bonilla Decl., ¶ 9.

24.    During the period from November 17, 2024 to December 16, 2025, Defendant issued approximately 13,382 wage statements to the 2,054 members of the Putative Class who were employed during this period. Bonilla Decl., ¶ 10.

25.    During the Class Period, the Putative Class worked approximately 109,414 workweeks, and 437,656 workdays/shifts based on the minimum calculation of 4 workdays/shifts per workweek. Bonilla Decl., ¶ 8. While many putative class members may have worked more workdays than that, this figure is provided here as a conservative floor for purposes of the analysis in this removal that is not reasonably subject to dispute.

**E.    Minimum Wage Claims**

26.    Plaintiff alleges that Defendant regularly failed to pay minimum wages to Plaintiff and the Putative Class in violation of California state wage and hour laws because members of the putative class were frequently suffered or permitted to work off the clock prior to clocking in and after clocking out. Complaint, ¶¶ 35-36.

27.    Plaintiff also alleges that the basis of his class action claim requires a determination as to whether "Defendants had a policy and practice of failing to pay minimum wages to Plaintiff and the other

5

FP 61019727.4

Class Members for all hours worked."   Complaint, ¶ 30(i).

28.   Plaintiff's allegations that Defendant failed to pay the Putative Class for all hours worked as a matter of "pattern and practice" would conservatively result in potential damages of one hour of work unpaid for 25% of shifts worked during the class period.  See, e.g., *Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. Jul. 27, 2022) ["District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]."]  Thus, it is conservative to state for purposes of determining the amount in controversy for this removal, applying California's current minimum wage (which Plaintiff concedes is lower than Class Members' rates of pay), that total liability is $1,444,264.80 (20% of all workdays/shifts (as a very conservative estimate) x 1 hour underpaid at the minimum wage owed ($16.50/hr.)).

29.   Furthermore, Plaintiff alleges liquidated damages pursuant to California Labor Code section 1194.2, which if proven places an amount in controversy that doubles the minimum wage violation to a total amount in controversy for minimum wage violations to the Putative Class at **$2,888,529.60** (minimum wage liability x 2).  *See* Complaint, ¶ 39.

### F.  Reporting Time Pay Claims

30.   Plaintiff alleges that Defendant failed to pay Plaintiff and the Putative Class reporting time pay based on claims that Plaintiff and the Putative Class reported to work shifts that were cancelled without proper notice; when staffing issues on Defendant's part prevented Plaintiff and the Putative Class from continuing or starting work; or when technical issues on Defendant's part prevented Plaintiff and the Putative Clas from continuing or staring work.  Complaint, ¶ 43.

31.   Plaintiff further alleges that Defendant had "a company-wide practice of sending employees home early from their scheduled shifts and/or not paying them for their scheduled day's work, including before they had worked at least half of their regular shift." Complaint, ¶ 45. Plaintiff also alleges that the basis of his class action claim requires a determination as to whether "Defendants had a policy and practice of failing to pay reporting time wages to Plaintiff and the other Class Members."  Complaint, ¶ 30(ii).

32.   Plaintiff claims that as a result of these violations, Plaintiff and the Putative Class is entitled

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)

FP 61019727.4

to be "paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage" for each workday where an employee was to report to work as required but is not put to work or is furnished less than half of their usual or scheduled day's work.  Complaint, ¶ 42.

33.    In reviewing the amount in controversy for reporting time pay claims based on allegations that the Defendant failed to pay reporting time based as part of a pattern or practice, courts have allowed defendants to assume a 20 percent violation rate.  *Beltran v. PeopleReady, Inc.*, No. 3:23-CV-00179-WHO, 2023 WL 3092973, at *5 (N.D. Cal. Apr. 25, 2023); *see also Perea v. Fedex Ground Package Sys., Inc.*, No. 20-CV-00610-DMS-AHG, 2020 WL 3989686, at *4 (S.D. Cal. July 15, 2020) [allowing Defendants to assume that employees were sent home two times per week].

34.    Accordingly, it is a reasonable interpretation of Plaintiff's Complaint that he seeks reporting time pay for those alleged violations, which is paid at the regular rate of pay for a minimum of two hours, which equals an additional floor of liability in the amount of **$2,888,529.60** (($16.50/hr. x 2 hr.) x 87,531.20, which is 20% percent of Class Members' workdays). Very likely Plaintiff is seeking a higher amount of unpaid overtime; thus, this is a conservative estimate.

**G.    Overtime Claims**

35.    Plaintiff alleges several theories for why overtime wages might be owed without pinpointing any violation that occurred to the Plaintiff or any Putative Class member, including by alleging that Defendant: failed to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay, knowingly permitted off-the-clock work, mischaracterized overtime as straight time, assigned more work than could reasonably be completed in a workday or workweek but failing to authorize necessary overtime, or omitted overtime from time calculations.  Complaint, ¶ 53.

36.    Plaintiff also alleges that the basis of his class action claim requires a determination as to whether "Defendants had a policy and practice of failing to pay minimum wages to Plaintiff and the other Class Members for all hours worked."  Complaint, ¶ 30(iii).

37.    While Plaintiff has not pinpointed any violation that occurred to the Plaintiff or any Putative Class Member, a reasonable extrapolation from Plaintiff's unpaid wages claim suggests that the time unpaid for overtime is equal to or consistent with the other unpaid time as the theories of liability

FP 61019727.4

(off the clock work pressure, mis-recording, etc.) are included in the overtime liability allegations.

38.    Accordingly, it is a reasonable interpretation of Plaintiff's Complaint that he seeks an overtime premium for those same unpaid hours, which is paid at 0.5x the amount unpaid, equals an additional floor of liability in the amount of an overtime premium at **$722,132.40** ($16.50/hr. x 1 hr. x 0.5 premium multiplied by 87,531.20, which is 20% percent of Class Members' workdays). Very likely Plaintiff is seeking a higher amount of unpaid overtime; thus, this is a conservative estimate.

**H.    Meal Period Claims**

39.    The Complaint alleges that "Plaintiff and other Class Members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes." Complaint, ¶ 61.  The Complaint further alleges that Plaintiff and Putative Class Members who worked shifts in excess of ten (10) hours but no longer than twelve (12) hours, and who did not waive their meal breaks were entitled to a second uninterrupted meal period of not less than thirty (30) minutes.  Complaint, ¶ 62.

40.    The Complaint further alleges that Defendant required Plaintiff and other Putative Class Members to work through their meal periods but failed to compensate them for work performed, and alleges that lunch breaks were late, short, interrupted, not duty-free, and that the Putative Class was restricted from leaving the premises during their breaks.  Complaint, ¶ 63.

41.    Plaintiff also alleges that the basis of his class action claim requires a determination as to whether "Defendants had a policy and practice of failing to provide meal periods to Plaintiff and the other Class Members."  Complaint, ¶ 30(iv).

42.    The Complaint seeks the recovery of one hour of pay at the regular rate of compensation for each workday in which a meal period violation was allegedly suffered by the Putative Class pursuant to Labor Code section 226.7.  Complaint, ¶ 66. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." The meal period claim brought under the Unfair Competition Law is subject to a four-year period of limitations.  *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB RBB, 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015).

FP 61019727.4

43. Based on the allegations that Putative Class members were not provided with meal periods and that Defendant had a "pattern and practice" that resulted in these violations, Defendant continues its conservative approach, for the purpose of this analysis only, that the Putative Class members were not provided one meal period 20% percent of their workdays. *See Serrieh v. Jill Acquisition LLC*, 707 F.Supp.3d 968, 977-75 (E.D. Cal. 2023) [finding defendant's violation rate of 24% reasonable where plaintiff alleged that defendant from time to time failed to provide legally required off-duty meal breaks]; *Bryant v. NCR Corp.*, 284 F.Sup.3d 1147, 1151 (S.D. Cal. 2018) [finding defendant's violation rate of 60% reasonable when the complaint is indeterminate with respect to violation rates]; *Sanchez v. Abbot Lab'ys,* No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, *4 (E.D. Cal. June 30, 2021) [finding a 60% violation rate reasonable where Plaintiff alleges a "pattern and practice" of meal period violations]; *Alfaro v. Banter by Piercing Pagoda*, No. SACV 22-00266-CJC(ADSx), 2022 WL 1284823, *3 (C.D. Cal. Apr. 29, 2022) ["A 25% violation rate is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy."]; *Olson v. Becton, Dickinson & Co.*, No. 19-cv-00865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) [finding a 25% violation rate to be appropriate].

44. Based thereon, the premium pay for the 6,042 employees is calculated as approximately **$1,444,264.80** (the current California minimum wage rate of $16.50 multiplied by 87,531.20, which is 20% of their workdays).

## I.    Rest Period Claims

45. The Complaint alleges that "Defendants routinely required Plaintiff and the other Class Member to work three and one-half (3 ½) or more hours without authorizing or permitting a compliant ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked." Complaint, ¶ 71. The Complaint further alleges that Defendant, *inter alia*, required or permitted Plaintiff and Putative Class Members to work during what should have been their rest periods and that Defendant failed to provide relief to facilitate rest breaks. Complaint, ¶ 72.

46. Plaintiff also alleges that the basis of his class action claim requires a determination as to whether "Defendants had a policy and practice of failing to provide rest periods to Plaintiff and the other Class Members." Complaint, ¶ 30(v).

47.     The Complaint seeks the recovery of one hour of pay at the regular rate of compensation for each workday in which a compliant rest break was not provided to the Putative Class.  Complaint, ¶ 76.  Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  The rest period claim brought under the Unfair Competition Law is subject to a four-year period of limitations. *Tajonar*, 2015 WL 4064642, at *3.

48.     The same math applies as with the meal period claim set forth in the prior section, as Defendant conservatively assumes for the purpose of this analysis only that the Putative Class members were not allowed one rest period 20% of their workdays, based on the allegation that Defendant had a "policy" of requiring members of the Putative Class to forgo their rest breaks. Based thereon, the premium pay for missed meal periods that is at controversy for the Putative Class is calculated as **$1,444,264.80** (the current California minimum wage rate of $16.50 multiplied by 87,531.20, which is 20% of their workdays).

**J.     Untimely Wage Payments**

49.     The Complaint alleges that Plaintiff and Putative Class members were entitled to timely wage payments under Labor Code section 204, which such payments to be made on the following schedule: "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."  See Complaint, ¶ 78-79; Labor Code § 204.

50.     The Complaint alleges that based on Defendant's failure to pay minimum wages, overtime, reporting time pay, and meal and rest break premiums, Defendant failed to timely pay Plaintiff and other Class Members all wages due to them within the time period required by Labor Code section 204. Complaint, ¶ 81.

51.     California law provides that if an employer fails to pay the wages of an employee as provided in Labor Code section 204, the employer "shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee" and "(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure

10

FP 61019727.4

to pay each employee, plus 25 percent of the amount unlawfully withheld." *See* Complaint, ¶ 82; Labor Code § 210.

52.    During the period from November 17, 2024 through December 16, 2025, Defendant issued approximately 13,382 wage statements to members of the Putative Class.  Bonilla Decl., ¶ 10. There are 2,054 members of the class during this period, and thus an equivalent number of "first" violated pay periods at issue, with the remainder being subsequent pay periods. *Id.* Thus, a calculation of the amount in controversy for the Putative Class, excluding the 25% unlawfully withheld, is (13,382 x $200) – (2,054 x $100) = $2,471,000. Conservatively applying this to only 50% of the class, which Plaintiff is almost certainly unwilling to cap accordingly, that figure is **$1,235,500**.

**K.    Wage Statement Penalties**

53.    Pursuant to Labor Code §226(a), Plaintiff alleges that the Putative Class was deprived of compliant wage statements in that the wage statements did not include all hours worked, actual gross wages earned, rest and meal premiums, and the correct rates of pay as a result of the violations for failure to pay minimum wages, overtime, reporting time wages, and meal and rest premiums.  Complaint at ¶¶ 84-85.

54.    Plaintiff alleges that because of Defendant's knowing and intentional failure to comply with Labor Code § 226, Plaintiff and members of the Putative Class are entitled to penalties under the California Labor Code as provided in Labor Code § 226.  Complaint, ¶ 88.  Those penalties equal $50 for the first violating pay period, and $100 per subsequent violation to an aggregate of $4,000 per putative class member. *See id.*; Labor Code § 226(e).

55.    During the period from November 17, 2024 through December 16, 2025, Defendant issued approximately 13,382 wage statements to members of the Putative Class.  Bonilla Decl., ¶ 10. There are 2,054 members of the class during this period, and thus an equivalent number of "first" violated pay periods at issue, with the remainder being subsequent pay periods. *Id.* Thus, a calculation of the amount in controversy for the Putative Class is (13,382 x $100) – (2,054 x $50) = $1,235,500. Conservatively applying this to only 50% of the class, which Plaintiff is almost certainly unwilling to cap accordingly, that figure is **$617,750**.

///

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)

FP 61019727.4

**L.** **Waiting Time Penalties**

56. California law provides that if an employer willfully fails to pay the wages of an employee who is discharged or quits, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid … but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). *See* Complaint, ¶¶ 90-91.

57. The Complaint alleges that as a result of the violations set forth above for failure to pay minimum wages, overtime, reporting time wages, and meal and rest premiums, Defendant failed to pay Plaintiff and members of the Putative Class their correct wages and accordingly owe waiting time penalties pursuant to Labor Code § 203. Complaint, ¶¶ 92-93.

58. Given the allegations, it is reasonable to assume (for purposes of this removal only), that members of the Putative Class who left their employment with Defendant, suffered at least one violation and were therefore not paid all wages owed upon the separation of employment. From November 17, 2022 through December 16, 2025, 4,132 members of the Putative Class left their employment with Defendant. Bonilla Decl., ¶ 9.

59. The amount in controversy on this claim is $16,362,720. This figure is based on daily rate of pay ($16.50/hr. x 8 hours = $132) x 30 days = $3,960 per sub class member. *See Mamika v. Barca*, 68 Cal.App.4th 487 (1998) (daily rate calculated by multiplying hourly rate by hours worked each day, and then the daily rate is multiplied by the number of days of nonpayment, up to 30 days). This number is then multiplied by the 4,132 former Wayfair employees. Even conservatively applying this to only 50% of the subclass of former employees, which Plaintiff is almost certainly unwilling to cap accordingly, the amount in controversy on this claim would equal **$8,181,360**.

**M.** **Attorney's Fees**

60. When the underlying substantive law provides for an award of attorneys' fees, the removing party may include that amount in its calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, at *10 (C.D. Cal. May 9, 2018).

61. Plaintiff has sought attorneys' fees in the Complaint which in class action cases is

FP 61019727.4

ordinarily measured by the Court as a percentage as the overall amount sought to be recovered. A conservative benchmark is a 25 percent fee award for attorneys' fees calculated on a percentage of the recovery basis. *Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675, at *9; *Stevenson v. Dollar Tree Stores, Inc.*, No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011), at *5. Thus applied, the amount in controversy is increased by 25% to account for Plaintiff's sought recovery of fees.

### N.    Conclusion on Amount in Controversy

62.    In the aggregate among Plaintiff's causes of action, and based on Defendant's conservative application here, the amount in controversy for the class as alleged in premium pay and penalties on the various claims is: **$19,422,331.20** even when discounting the frequency of the claimed liability to account for allegations of "policies and practices", which surely Plaintiff is unwilling to so cap. To that figure an additional 25% can be included to account for the benchmark for attorney's fees in controversy. Thus, the amount that Plaintiff has placed in controversy in this class action is well in excess of the jurisdictional threshold of $5,000,000.

63.    Accordingly, minimal diversity, class size, and the amount in controversy under the CAFA are satisfied pursuant to 28 U.S.C. § 1332, and therefore Wayfair has properly removed this State Court Action to this Court.

## V.    VENUE

64.    Plaintiff originally filed this action in the Superior Court of the State of California, County of Alameda. The County of Alameda lies within the jurisdiction of the United States District Court, Northern District of California. Therefore, venue also lies in the Northern District of this Court pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a). This Court is the United States District Court for the district within which the State Court Action is pending. Thus, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## VI.    SERVICE OF NOTICE OF REMOVAL ON STATE COURT

65.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Alameda, as required under 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendant prays that this civil action be removed from the Superior Court of the

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)

FP 61019727.4

State of California, County of Alameda, to the United States District Court for the Northern District of California.

Dated: January 12, 2026                           Respectfully submitted,

                                                  FISHER & PHILLIPS LLP


                                          By: */s/ Elizabeth T. Ferguson*
                                              Nathan K. Low
                                              Elizabeth T. Ferguson
                                              Jonathan G. Chang

                                              Attorneys for Defendant
                                              WAYFAIR LLC

14

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332 (D)(2) AND (5)

FP 61019727.4